UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARSHA A. VAZMINA, | ) | CASE NO. 4:10CV2141 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | **ORDER AND DECISION** |
| PATRICK R. DONAHOE, | ) | (Resolves Docs. 28, 39, 43) |
| POSTMASTER GENERAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court upon a motion for summary judgment filed by Defendant Patrick R. Donahoe, Postmaster General for the U.S. Postal Service (Defendant).  Doc. 28. For the reasons stated herein, Defendant's motion is GRANTED. Defendant's motion to strike declaration and motion to disqualify counsel, Doc. 39, and motion to add exhibit to motion to strike declaration, Doc. 43, are moot and hereby DENIED.

## I.    Facts & Procedural History

The following facts are undisputed by the parties. Plaintiff began employment with the Defendant in 1981 in Van Nuys, California. In 1986, Plaintiff continued her employment with the Defendant but transferred to a facility in Youngstown, Ohio. At the Youngstown facility, Plaintiff was assigned to work as a Mail Processing Clerk where her duties included operating the automated mail processing equipment. Plaintiff's shift was 11:00 a.m. to 8:00 p.m. From 11:00 a.m. to 3:00 p.m., James A. Cecil Jr. was Plaintiff's Manager of Distribution Operations (MDO). From 3:00 p.m. until the end of her shift, Plaintiff was supervised by MDO, Nicholas Ferraro. During all times, Plaintiff's immediate supervisor was David Smith.

In 1999, doctors diagnosed Plaintiff with Multiple Sclerosis. The disease causes problems with balance and Plaintiff's use of her legs. Since the diagnosis, Plaintiff's condition has declined. As her condition deteriorated, Plaintiff went from using a cane to using a walker. By 2004, Plaintiff required a power wheel chair to help with her mobility. Dr. Lael Stone, Plaintiff's physician, wrote five letters between 2004 and 2005 requesting that Defendant accommodate Plaintiff. Dr. Stone stated that Plaintiff required a set work schedule. In a letter dated September 30, 2004, Dr. Stone indicated that Plaintiff should continue to work her assigned hours 11:30 a.m. to 8:00 p.m. "due to the unpredictable nature of her disease and the significant fatigue and weakness associated with MS." Dr. Stone also stated that Plaintiff should not stand for more than thirty minutes in an eight-hour period, she could not work mandatory overtime, and she may not lift more than 20 pounds.

Because of Plaintiff's medical condition, Plaintiff sought relocation to an area with milder weather. In approximately 2001, Plaintiff applied for a transfer to a facility in Las Vegas. The Las Vegas district denied her request, and Plaintiff pursued an Equal Employment Opportunity action against the District. The EEO case was settled in October 2007. Plaintiff continued to work at the Youngstown facility.

As Plaintiff's condition continued to deteriorate, Plaintiff required assistance from other postal employees to help her perform personal tasks while on the job. Plaintiff's coworkers would elevate Plaintiff's legs and clean off her car during inclement weather. Plaintiff's coworkers were also summoned to assist Plaintiff when she fell.  In May 2002, Plaintiff suffered a head laceration when she fell in the women's restroom. In January or February 2007, Plaintiff fell in the restroom while transferring from the toilet to her wheelchair. Two male employees, Greco Bush and Demetrice Jones, were summoned to lift Plaintiff off the floor and into her

wheelchair. On October 31, 2007, Plaintiff fell in the restroom again. In this instance, two different male employees, Dave Smith and Ernest Shipley, were needed to lift Plaintiff back into her wheelchair.

Citing concern for Plaintiff's safety and the safety of other employees, Defendant placed Plaintiff on off-duty status on November 9, 2007. On November 14, 2007, Defendant sent Plaintiff for a Fitness for Duty examination. Dr. Mease, an occupational and environmental physician, determined that Plaintiff could not perform the essential functions of a Mail Processing Clerk. On December 5, 2007, Dr. Shapiro, a neurologist, examined Plaintiff. Dr. Shapiro also concluded that Plaintiff could not perform the essential functions of a Mail Processing Clerk but could perform manual sorting. Finally, on December 20, 2007, Heather Lavelle, a physical therapist, conducted a Functional Capacity Examination. Ms. Lavelle found that Plaintiff could lift and grasp; however, Plaintiff was unable to perform the carrying, walking, and standing requirements required by the Mail Processing Clerk position.

On November 28, 2007, Dr. Lael A. Stone, Plaintiff's physician, sent a letter to Defendant. The letter stated that Plaintiff had a "medical need" for the Defendant to install a second grab bar in the women's handicap toilet stall. The letter further requested Defendant to allow an employee to assist her in the restroom, and for the Defendant to modify the letter case where she conducts manual sorting to allow Plaintiff to elevate her legs. In January 2008, the Ohio Northern District Reasonable Accommodation Committee (DRAC) reviewed Plaintiff's requests for reasonable accommodation. In March 2008, the DRAC determined that Plaintiff was unable to perform the essential functions of her bid position with reasonable accommodations and that there were no vacant funded positions for which Plaintiff qualified with reasonable

accommodation. Based on its findings, the DRAC closed Plaintiff's file. Plaintiff did not resume employment with Defendant.

On September 23, 2010, Plaintiff filed this action. Plaintiff's claims were brought under the Rehabilitation Act and include allegations of disparate treatment, failure to accommodate, and retaliation.

On June 1, 2011, Defendant moved for summary judgment on all of plaintiff's claims under the Rehabilitation Act (Doc. 28) and Plaintiff responded (Doc. 37).

## II.    Standard of Review

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must show that there is an absence of a genuine issue of material fact as to at least one element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party makes a motion for summary judgment that is properly supported, the non-moving party must set forth facts that show that there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The quintessential question for the court to decide is whether there are any genuine issues of material fact that can be resolved by the factfinder. *Id.* In determining whether a genuine issue of material fact exists, the court must view the evidence in a light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 198 U.S. 144, 158 (1970).

## III.    Law and Analysis

Defendant moves for summary judgment on Plaintiff's claims for Retaliation, Disparate Treatment, and Failure to Accommodate in violation of the Rehabilitation Act, 29 U.S.C. §701 et seq. The Act prohibits an employer from discriminating against a "qualified individual with a disability" because of the individual's disability when discharging an individual from employment. *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). Each of Plaintiff's claims are addressed below.

### A.    Failure to Accommodate

A prima facie case for disability discrimination based on an employer's failure to accommodate requires the plaintiff to show that:

1) [S]he is an individual with a disability within the meaning of the Act;
2) [S]he is otherwise qualified to perform the essential functions of… [her] job;
3) [Her] employer was aware of the disability; and
4) the employer failed to provide a reasonable and necessary accommodations for [her] disability.

*Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997). Once the plaintiff establishes her prima facie case, the burden shifts to the defendant to show that the employee cannot reasonably be accommodated. *Id.* at 1175-76.

### 1.    Individual with a Disability

There is no issue with regard to whether Plaintiff is an individual with a disability. Plaintiff and Defendant acknowledge that Plaintiff has "a physical impairment which substantially limits one or more major life activities." See 45 C.F.R. §84.3(j)(1). In its motion for summary judgment, Defendant identifies medical records that show Plaintiff has been living with

5

Multiple Sclerosis for over ten years. Plaintiff has faced deteriorating physical impairment that requires her to use a motorized wheelchair and that requires help from home health aides.

### 2. "Otherwise Qualified" to Perform the Job Requirements With or Without a Reasonable Accommodation

This issue is fully discussed below in the Court's analysis of Defendant's motion for summary judgment on Plaintiff's Disparate Treatment claim.

### 3. Employer was aware of the disability

Defendant does not argue that it was unaware of Plaintiff's disability.  As previously stated, Defendant acknowledges that Plaintiff is an individual with a disability.

### 4. Employer Failed to Provide a Reasonable and Necessary Accommodation for the Disability

Even if Plaintiff was otherwise qualified, this claim cannot survive summary judgment because her requested accommodations were unreasonable. Reasonable accommodations include allowing measures like job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, and other similar accommodations for individuals with disabilities. 29 U.S.C. §794(d), 42 U.S.C. 12111(9). While an employer must provide reasonable accommodations, the employer is not required to modify or reallocate essential functions of a job in order to accommodate an individual under the Rehabilitation Act. *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 633 (6th Cir. 1999).

Prior to Plaintiff's only formal request for reasonable accommodation on November 28, 2007, Defendant permitted Plaintiff to use her motorized wheelchair on the workroom floor, allowed her to get assistance from other employees when lifting mail trays, and provided Plaintiff with a fixed work schedule working only weekdays from 11:30 a.m. to 8:00 p.m. Plaintiff's November 28, 2007 formal request for reasonable accommodations requested that

Defendant accommodate her in the following ways: (1) install an additional grab bar in the handicap toilet stall of the women's restroom; (2) allow an "attendant to accompany her to the bathroom to assist with transfers if needed"; and (3) modify the letter case so that Plaintiff can elevate her legs while sorting. Additionally, her overall request was for Defendant to reinstate Plaintiff to her previous duties, manually sorting mail. It is undisputed that Defendant complied with the first request and installed an additional grab bar in the handicap stall of the women's restroom. However, Defendant argued that Plaintiff's request to modify the letter case and her request for a bathroom assistant were unreasonable accommodations. This Court agrees.

The request to modify the letter case is an unreasonable accommodation. Defendant has the burden to "present credible evidence that a reasonable accommodation is not possible in a particular situation." See *Hall v. U.S. Postal Service*, 857 F.2d 1073, 1080 (6th Cir. 1988) (citing 29 C.F.R. §1613.704(a)). Defendant has provided direct and credible evidence that the letter case cannot be modified without threatening the integrity of the case's structure. In his declaration, Randall Tharp, former Manager of Field Maintenance at the Youngstown facility, stated that Maintenance looked into Plaintiff's request to remove a metal bar/ shelf at the bottom of the letter case to allow her to elevate her legs while sorting. Specifically, Mr. Tharp stated that the bar was in place to ensure that the case would not tip over. If the bar was removed, there was a risk that the case could tip and fall on Plaintiff if bumped. Because the removal of the support bar was impossible without compromising Plaintiff's safety, her requested accommodation to modify the case was not reasonable.

Further Plaintiff's request for an assistant to accompany her to the restroom was an unreasonable accommodation. Plaintiff's request for an accommodation asked for one assistant to accompany her to the restroom and help her transfer "if needed." It was not only likely but

also inevitable that Plaintiff would require physical assistance in the restroom. Plaintiff's physician, Dr. Stone, stated that Plaintiff's medical records showed that she reporting falling 1-2 times per month in October 2005. In March 2007, Dr. Stone noted that Plaintiff was a fall risk when making transfers from her wheelchair. The depositions of Plaintiff's coworkers and supervisors show that she fell in the restroom twice in 2007. On both occasions, Plaintiff required help from at least two male Postal Service employees after attempting to transfer between the toilet and her wheel chair. Employees had to enter the women's restroom, help Plaintiff adorn her clothing, and lift Plaintiff from the floor to her wheelchair.

It is an unreasonable accommodation to require an employer to assign existing duties that the disabled employee cannot perform to other employees. *Steward v. New Chrysler*, 415 Fed.Appx. 632, 642 (6th Cir.  2011) (citing *Bratten*, 185 F.3d at 632). Further, an employer is not required to displace existing employees from their positions or violate another employee's rights under a collective bargaining agreement in order to accommodate a disabled employee. *Cassidy v. Detroit Edison Co.,* 138 F.3d 629, 634 (6th Cir. 1998)). If it is unreasonable for an employee to be required to assist a disabled employee with employment functions then it logically follows that it is unreasonable to require an employee to assist a disabled employee with personal matters throughout the workday. While the ability to use the restroom facilities is not listed as an essential function of the Mail Processing Clerk or the Manual Clerk positions, the Court concludes that the ability to complete the task is fundamental to any position within the Postal Service.

Therefore, Defendant's motion for summary judgment on Plaintiff's claim for failure to accommodate under the Rehabilitation Act is GRANTED.

**B.     Disparate Treatment**

When there is direct evidence of discrimination, a claim for disparate treatment under the Rehabilitation Act requires the Plaintiff to show that:

    1)  [S]he is an individual with a disability;
    2)  [S]he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and
    3)  [S]he was discharged solely by reason of… [her] handicap.

*Monette*, 90 F.3d at 1178. Direct evidence of discrimination exists when there is evidence that the employer relied on plaintiff's disability in making its decision. *Id.*

Defendant has properly demonstrated that there is no genuine issue of material fact concerning Plaintiff's disparate treatment claim under the Rehabilitation Act. Plaintiff claims that she was unlawfully terminated from her position because she was an employee with a disability, she was qualified to perform the essential job requirements with a reasonable accommodation, and Defendant terminated her solely because of her disability. Defendant contends that Plaintiff is not an otherwise qualified individual with a disability, Plaintiff's requests for accommodation were not reasonable, and Plaintiff's discharge was not solely based upon her handicap.

**1.     Individual with a Disability**

As discussed previously, there is no genuine issue of material fact as to whether Plaintiff is disabled.

**2.      "Otherwise Qualified" to Perform the Job Requirements With or without a Reasonable Accommodation**

When the plaintiff is an individual with a disability and the Defendant relied on Plaintiff's disability in making its determination to discharge her, summary judgment often turns on whether there is a genuine issue of material fact as to whether Plaintiff is "otherwise

qualified" to perform her job with a reasonable accommodation. *Monette*, 90 F.3d at 1182. When the plaintiff claims that she would be able to perform the essential functions of the position with a reasonable accommodation, this Court must examine whether the accommodation is reasonable, whether the proposed accommodation would impose a hardship on the employer, and whether the plaintiff would be able to perform the job with a reasonable accommodation. *Id.* at 1183.

In its motion for summary judgment, Defendant demonstrates that there is an absence of a genuine issue of material fact because Plaintiff is not otherwise qualified to perform the requirements of her bid position as a Mail Processing Clerk even with a reasonable accommodation. Defendant points to the Fitness for Duty examination performed by Dr. Mease who concluded that the Plaintiff could not perform the reaching and lifting functions of a Mail Processing Clerk "in a safe manner." Defendant also points to the report of Dr. Shapiro who performed a Neurological Fitness for Duty Examination on December 5, 2007. Dr. Shapiro reported that based on the job description for a Mail Processing Clerk, "there is no possible way that [Plaintiff] could satisfy her physical job requirements." Finally, Defendant points to the report of Heather Lavelle, a physical therapist, who conducted Plaintiff's Limited Functional Capacity Examination on December 20, 2007. Ms. Lavelle observed that Plaintiff was unable to perform the standing, walking, kneeling, bending, and twisting requirements of the Mail Processing Clerk Position.

To avoid summary judgment, the Plaintiff must show that a genuine issue of material fact exists whether Plaintiff is otherwise qualified to perform the job requirements of her position with or without a reasonable accommodation. See *Anderson*, 477 U.S. at 250. Plaintiff has failed to meet that burden. By Plaintiff's own admissions at the DRAC meeting held March 12, 2008,

10

she was unable to perform the essential requirements of a Mail Processing Clerk because she was unable to stand or work with machinery even with a reasonable accommodation.

Instead, Plaintiff seeks to show that there is an issue a material fact by arguing that she is otherwise qualified to perform the job requirements of a Manual Clerk with a reasonable accommodation because she had been permitted to manually sort mail for eight years prior to her placement on emergency off-duty status. While her work schedule restriction may be reasonable on its own, Defendant has properly identified that Plaintiff's restrictive work hours make it such that she is unable to perform an essential function of the manual sorting position, the ability to start work after 7:00 p.m. As previously stated, an employer is not required to modify essential functions of a job in order to accommodate an individual under the Rehabilitation Act.

Defendant points to the Declaration from Nicholas Ferraro, Manager of Distribution Operations at the Youngstown facility, who explains that one of the essential functions of the manual clerk position is the ability to manually sort mail after 7:00 p.m. Mr. Ferraro stated that it is essential that manual sorting begin after 7:00 p.m. because there is not a sufficient amount of mail requiring manual sorting throughout the day. In her declaration dated May 26, 2011, Patricia Santini, former Manager of In-Plant Support at the Youngstown facility, provided data that showed the decrease in mail requiring manual sorting. Ms. Santini reported that the number of manual trays sorted per day declined from an average of 72 trays per day in 2002 to an average of 39 trays per day in 2007. The low volume of mail to manually sort during the day was demonstrated when the DRAC observed Plaintiff's duties on February 19, 2008. Specifically, the amount of mail available to manually sort between 11:30 a.m. and 8:00 p.m. amounted to one hour of work. An employer is not required to create a position to accommodate a disabled individual. *Denczak v. Ford Motor Co.*, 215 Fed.Appx. 442, 445 (6th Cir. 2007). Although the

11

Manual Clerk position exists, it exists only during overnight hours, and Defendant is not required to create a position where one does not exist.

For these reasons, no genuine issue of material fact exists as to whether Plaintiff is otherwise qualified to perform the requirements of a Manual Clerk. By her own statement in the March 12, 2008 DRAC meeting, Plaintiff stated she was unable to perform manual sorting because the position was only available outside of her restricted work hours.

### 3.     Discharged Solely by Reason of Handicap

Because this Court finds that there is no genuine issue of material fact whether Plaintiff was "otherwise qualified" to perform the job requirements with or without a reasonable accommodation, an analysis concerning the reason for Plaintiff's discharge is unnecessary.

Therefore, Defendant's motion for summary judgment on Plaintiff's disparate treatment claim under the Rehabilitation Act is GRANTED.

### C.     Retaliation

To make out a prima facie claim for retaliation, the Plaintiff must show that:

1) the plaintiff engaged in legally protected activity;
2) the defendant knew about the plaintiff's exercise of this right;
3) the defendant then took an employment action adverse to the plaintiff; and
4) the protected activity and the adverse employment action are casually connected.

*Amann v. Potter*, 105 Fed.Appx. 802, 807 (6th Cir. 2004). Once the plaintiff makes her prima facie showing, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason" for the adverse action. *Id.* at 808. Once the defendant articulates such a reason, the burden shifts back to the plaintiff to demonstrate that the defendant's stated reason was a pretext for disability discrimination. *Id.*

12

### 1. Prima Facie Claim for Retaliation

Plaintiff argues that Defendant's managers placed her on off-duty status as retaliation for refusing to retire as a part of a settlement agreement reached between Plaintiff and Defendant in the 2001 EEO action regarding her potential transfer to Las Vegas. Specifically, Plaintiff argues that Defendant managers knew that a set date of retirement was a part of the settlement negotiations. Further, Plaintiff claims that the decision to place her on off-duty status was causally related to her refusal to agree to retirement as part of her settlement agreement in the prior EEO case.

Plaintiff has failed to establish that a genuine issue a material fact exists that Defendant managers had actual knowledge of negotiation discussions; specifically, discussions concerning the possibility of Plaintiff retiring. The decision to place Plaintiff on emergency off-duty status was made by Plaintiff's direct supervisors: Annette Dressler, John Upthegrove, and James Cecil. Annette Dressler testified at her deposition that she had no knowledge that Plaintiff's retirement was discussed during settlement negotiations. Ms. Dressler also stated that the decision to place an employee on emergency off-duty status is made by the party's supervisors. John Upthegrove testified that he did not have knowledge that the Postal Services requested that Plaintiff retire as part of the settlement negotiations in her EEO case. Finally, on January 16, 2008, James Cecil submitted an affidavit that stated he was unaware of any prior EEO activity.

Plaintiff has not brought forth any evidence that would create an issue of fact that any one of these individuals had knowledge that Plaintiff's retirement was discussed in the settlement negotiations of her prior EEO case. Mere knowledge of the prior EEO case is not enough to create a material issue whether Plaintiff's supervisors knew of specific terms of the settlement negotiations. Even if there was a material issue of fact concerning the "knowledge" element,

summary judgment is warranted because Defendant proffered a legitimate, non-discriminatory reason for its adverse action against Plaintiff, and Plaintiff has failed to establish that pretext led to the adverse action.

### 2.      Legitimate, Non-discriminatory Reason for Adverse Action

If a plaintiff makes a prima facie showing of retaliation in violation of the Rehabilitation Act, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The fact that a disability poses a "direct threat to the health or safety of other individuals in the workplace" is a defense to a disability discrimination claim. *Hubbard v. Detroit Public Schools*, 372 Fed.Appx. 631, 637 (6th Cir. 2010) (citing 42 U.S.C. § 12113(b); 29 C.F.R. § 1630.15(b)(2)) (internal quotations omitted). Defendant contends that its decision to place Plaintiff on off-duty status was due to concern for Plaintiff's safety and other employees around her. Defendant shows this through deposition testimony and declarations. Repeatedly, Defendant states that the decision to place Plaintiff on emergency off-duty status was the concern for the safety of Plaintiff and other employees after Plaintiff fell in the bathroom and required substantial assistance for the second time in a year.

### 3.      Pretext for Discrimination

If a defendant proffers a legitimate, non-discriminatory reason for the plaintiff's discharge, the plaintiff may still show retaliation with evidence that the defendant's action was a pretext for discrimination. *Amann v. Potter*, 105 Fed.Appx. at 808. To show pretext, a plaintiff may show that the defendant's reason: (1) had no basis in fact; (2) did not actually motivate the discharge; or (3) was insufficient to motivate the discharge. See *Jones v. Potter*, 488 F.3d 397,

14

406 (6th Cir. 2007). Ultimately, the burden is on a plaintiff to show "that the reason was false, and that discrimination (or retaliation) was the real reason" for the adverse employment action. *Baker v. Windsor Repulic Doors*, 414 Fed.Appx. 764, 778 (6th Cir. 2011) (quoting *Harris v. Metro. Gov't of Nashville & Davidson* Cnty., *Tenn.,* 594 F.3d 476, 486 (6th Cir. 2010)) (internal quotations omitted). Plaintiff fails establish that a genuine issue of material fact exists that Defendant's non-legitimate, non-discriminatory reason was false, that the reason did not actually motivate the adverse action, or that unlawful retaliation was the real reason for Plaintiff's placement on emergency off-duty status.

Defendant properly points to the declarations of postal employees and supervisors, which show that Plaintiff twice fell in the women's restroom in 2007 and required physical assistance from at least two employees on each occasion. Managers John Upthegrove, James Cecil, and Nicholas Ferraro each stated that concern for Plaintiff's safety and the safety of other employees led to the decision to place Plaintiff on off-duty status. Plaintiff directs this court to find pretext because the timing of the decision to place Plaintiff on off-duty status and the finalization of her prior EEOC settlement. However, the Sixth Circuit has repeatedly held that "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Coulter v. Deloitte Consulting, L.L.C.*, 79 Fed. Appx. 864, 867 (6th Cir. 2003) (citing *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 317 (6th Cir.2001); *Cooper v. City of North Olmsted,* 795 F.2d 1265, 1272 (6th Cir.1986)) (internal citations omitted). Plaintiff has failed to provide evidence that would create an issue of material fact whether the motive for the termination was Defendant's concerns for Plaintiff's safety and the safety of other employers, or whether settlement negotiations of the prior EEO case motivated Defendant's action.

15

Plaintiff further argues that Defendant's proffered reason was insufficient because it has not identified any example where a falling incident led to emergency placement on non-duty status. While there are no previous falling incidents that led to emergency placement of an employee on off-duty status, Plaintiff points out that Defendant has repeatedly placed employees on emergency status when they exhibit a danger to themselves or other postal employees. The concern for Plaintiff's safety and the safety of her coworkers was the determining factor in the decision to place Plaintiff on emergency off-duty status because of her recent fall in the restroom. Plaintiff has failed to show that there is a genuine issue of material fact. Instead, the evidence shows that Defendant's reason for placing Plaintiff on emergency off-duty status was supported by facts, that alleged pretext did not motivate the Defendant's adverse action,  and that Defendant's reason is sufficient to motivate its decision to place Plaintiff on emergency off-duty status.

Because Defendant presented a nondiscriminatory reason for placing Plaintiff on emergency off-duty status, and Plaintiff has failed to show pretext, Defendant's motion for summary judgment on Plaintiff's retaliation claim is GRANTED.

## IV.    Conclusion

For the reasons set forth herein, the Defendant's motion for summary judgment is GRANTED. Defendant's motion to strike declaration and motion to disqualify counsel, Doc. 39, and motion to add exhibit to motion to strike declaration, Doc. 43, are moot and hereby DENIED.

IT IS SO ORDERED.

DATE: March 29, 2012                    /s/ John R. Adams
                                       Judge John R. Adams
                                       UNITED STATES DISTRICT COURT

16